IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


DAVID MICHAEL GLATTS,         )
                                        )
                    Plaintiff     )
                                         )
        vs.                     )       Civil Action No. 09-29
                                         )       Chief Magistrate Judge Lisa Pupo Lenihan
SUPERINTENDENT LOCKETT; MR.    )
MATTHEWS (AOD Director); DR.     )
CAIRINS, Director of Psychology    )
Department; MS. KWISNEK (ADA    )
Facilitator Director); DEPUTY      )
SUPERINTENDENT TREVOR       )
WINGARD; DR. McGRAFF (Medical  )
Director); PRISON HEALTH SYSTEMS )
(PHS), Ms. PRICE, TC Program Director; )
Mr. SECKERS, Deputy SCI-Greensburg; )
JEFFREY BEARD, Ph.D., Secretary of  )
DOC; Mr. ALAN FOGEL, Director, Bureau )
of Health Care, Pa. DOC; INMATE DIS- )
ABILITY COMMITTEE, Pa. DOC;    )
BUREAU OF TREATMENT SERVICE,  )
Pa. DOC; and Mr. RAYMOND SOBINA, )
                                         )
                 Defendants   )       Re ECF No. 78


## MEMORANDUM OPINION AND ORDER


Because State prisoner, David Michael Glatts ("Plaintiff") has failed to carry his burden

concerning any of the four prongs of the test for meriting a preliminary injunction, the Court will

deny his motion for a preliminary injunction.

### Relevant Procedural History

Plaintiff initiated this civil rights suit pursuant to 42 U.S.C. § 1983 on January 12, 2009,

complaining of conditions at SCI-Greensburg, where Plaintiff is housed.  The original complaint

named seven defendants. Five of the defendants appear to be employees of the Pennsylvania Department of Corrections ("DOC"), collectively, the "DOC defendants". The other two defendants, named in the original complaint, are Dr. McGraff, an independent contractor-physician at SCI-Greensburg, who treated Plaintiff, and Prison Health Services, Inc. ("PHS"), collectively, "the Medical Defendants". PHS is the independent contractor that DOC contracted with to provide medical services at SCI-Greensburg. The original complaint essentially alleged a statutory cause of action, complaining that Plaintiff has two disabilities, *i.e.*, major depression and neuropathy in both lower legs and that the Defendants' allegedly failed to accommodate and/or treat Plaintiff's disabilities which, he contends, violated his ADA rights. Plaintiff contended in his complaint that he was terminated from a program known as AOD, ("Alcohol and Other Drug" treatment program). Plaintiff contended that he believes he was entitled to changes in the AOD program that better suited his disabilities. ECF No. 4 at 2, ¶ IV. In response to the question asked, what federal law do you claim was violated, Plaintiff asserted Title II of the Americans With Disabilities Act ("ADA"). Id., at 2, ¶ III.

More recently, he filed an amended complaint, ECF No. 59, that added seven new defendants, namely, 1) Ms. Prices, the Therapeutic Community Director; 2) Mr. Seckers, Deputy Superintendent; 3) Jeffrey Beard, former DOC Secretary; 4) Alan Fogel, Director of the Bureau of Health Care Services; 5) the Inmate Disability Committee; 6) the Bureau of Treatment Service; and 7) Raymond Sobina, Deputy DOC Secretary for the Western Division. Plaintiff added Eighth Amendment claims of deliberate indifference for allegedly failing to adequately treat his back post surgery and to adequately treat his neurological problems with his legs and his walking.

Plaintiff has also now filed another motion for preliminary injunction. ECF No. 78.[1]  By this motion for preliminary injunction, Plaintiff indicates that he seeks 1) an immediate consultation with a neurologist for compression of the nerves in his lumbar spine; 2) immediate entrance into the AOD and/or TC  programming, and 3) immediate epidural steroid injections into his lumbar spine in order to address his pain. ECF No. 85 at 1 to 2.

The Medical Defendants filed their response, ECF No. 81 and a brief in opposition.  ECF No. 82.  The DOC Defendants filed their response, ECF No. 83, and more recently a supplemental response which included, *inter alia*, Plaintiff's medical records and medical documentation up to November 30, 2010.  ECF No. 84-1 at 1 to 62.  Plaintiff filed a reply to the DOC's response, ECF No. 84, and also a supplemental reply.  ECF No. 87.

**Applicable Legal Standards**

In determining whether a preliminary injunction ("PI") is warranted, a court must consider:  (1) whether the movant has shown a reasonable probability of success on the merits;  (2) whether the movant will be irreparably harmed by denial of the relief;  (3) whether granting preliminary relief will result in even greater harm to the nonmoving party;  and (4) whether granting the preliminary relief will be in the public interest. Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999).  More specifically, with regards to the fourth prong, one seeking a PI must show that the issuance of the injunctive relief will not be adverse to the public interest.  Dominion Video Satellite, Inc. v. Echostar Corp., 269 F.3d 1149, 1154 (10th Cir. 2001). It  "frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)(emphasis deleted).   Further, the

---

[1] Plaintiff previously filed a motion for preliminary injunction, ECF No. 11, which was denied. ECF No. 45.

Court is to bear constantly in mind that an "[i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case." <u>Plain Dealer Publishing Co. v. Cleveland Type. Union # 53</u>, 520 F.2d 1220, 1230 (6th Cir. 1975). As a corollary of this principle that preliminary injunctions should issue only in a clear and plain case, our Third Circuit Court of Appeals has observed that "upon an application for a preliminary injunction to doubt is to deny." <u>Madison Square Garden Corp. v. Braddock</u>, 90 F.2d 924, 927 (3d Cir. 1937). <u>See</u> <u>also</u> <u>McCullough v. Miller</u>, NO. CIV. A. 06-514, 2007 WL 4191974, at *1 (W.D.Pa. Nov. 21, 2007) (same); <u>Spirol Int'l Corp. v. Vogelsang Corp.</u>, 652 F.Supp. 160, 161 (D.N.J. 1986)(same). Moreover, it is plaintiff's burden to show that the "preliminary injunction must be the only way of protecting the plaintiff from harm." <u>See</u> <u>Campbell Soup Co. v. ConAgra, Inc.</u>, 977 F.2d 86, 91 (3d Cir. 1992). With respect to the "irreparable harm" prong of proving entitlement to a PI, the Court of Appeals for the Third Circuit has emphasized that the "key aspect of this prerequisite is proof that the feared injury is irreparable; mere injury, even if serious or substantial, is not sufficient." <u>United States v. Commonwealth of Pennsylvania</u>, 533 F.2d 107, 110 (3d Cir. 1976). Additionally, in carrying his burden to show irreparable harm, a "plaintiff must make a clear showing that irreparable harm will occur immediately. *See* <u>ECRI v. McGraw- Hill, Inc.</u>, 809 F.2d 223, 226 (3d Cir. 1987). For "a showing of irreparable harm is insufficient if the harm will occur only in the indefinite future. Rather, the moving party must make a clear showing of *immediate* irreparable harm." <u>Campbell Soup</u>, 977 F.2d at 91 (internal quotations omitted). Indeed, the Court of Appeals for the Third Circuit "insisted that the risk of irreparable harm must not be speculative." <u>Adams v. Freedom Forge Corp.</u>, 204 F.3d 475, 488 (3d Cir. 2000).

**Discussion**

**A.  Likely Success on the Merits**

The court has carefully reviewed the amended complaint and applicable law and finds that Plaintiff has failed to establish a reasonable probability of success on the merits as to his claims.  The medical records reveal Plaintiff's extensive treatment at the hands of the Defendants.  With respect to the Eighth Amendment claim as to the DOC Defendants, in light of the extensiveness of the treatment provided, there is no reason for these DOC defendants, none of whom are medical doctors to know that Plaintiff was being denied treatment.  Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) ("The only allegation against either of these two [prison official] defendants was that they failed to respond to letters Durmer sent to them explaining his predicament.  Neither of these defendants, however, is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.") (footnoted omitted);  Thomas v. Zinkel, 155 F.Supp.2d 408, 413 (E.D. Pa. 2001) ("Prison authorities who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.  Similarly, health care administrators cannot be found deliberately indifferent when an inmate is receiving care from a doctor.")(internal citations and quotations omitted).

The Court of Appeals did explain the above general Durmer rule is not an absolute rule. In Spruill, the Court held that

> absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official like Gooler will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

<u>Spruill v. Gillis</u>, 372 F.3d 218, 236 (3d Cir. 2004).

Here, given the extensiveness of the medical records and the facts reflected therein, there can be no reason that the DOC Defendants would have had to believe or actual knowledge that Plaintiff was being mistreated.   It is true that Plaintiff filed some grievances and/or made verbal complaints, which may have provided knowledge to various DOC Defendants that Plaintiff was dissatisfied with the medical care, but more is needed than this, otherwise every time a prisoner complains about his treatment, such would be sufficient to render the non medical personnel liable.  But the Eighth Amendment requires the showing of a subjective prong, i.e., deliberate indifference.  Here, given the record evidence provided by the Defendants, including the medical records, there is no reason that the DOC Defendants could be held deliberately indifferent.

As for the medical defendants, it appears that there is an absence of evidence of deliberate indifference on their part as well in light of the medical records.  At most, the evidence establishes either a mere disagreement between Plaintiff and his medical providers or at most negligence on the part of the medical providers.  This is insufficient to make out an Eighth Amendment claim. <u>Estelle v Gamble</u>, 429 U.S. 97, 105-06 (1976).

Regarding Plaintiff's claims under Title II of the ADA, the Court notes that the evidentiary materials supplied by the DOC defendants, ECF No. 37-2[2] sufficiently undermine Plaintiff's claims such that the court is in grave doubt about the likelihood of success on the merits as to his claims.  Moreover, Plaintiff apparently seeks to be placed in AOD/TC programming.  Plaintiff himself adduced evidence that he was told that he will be entering the TC on December 7, 2010.  ECF No. 87-1 at 2.   If he was in fact placed into such programming

---

[2] The DOC Defendants effectively incorporated their earlier response to Plaintiff's first preliminary injunction motion into their current response to the presently pending motion for preliminary injunction. See ECF No. 83 at 2, ¶ 4.

then his request for injunctive relief as to this point is moot. Moreover, to the extent that he seeks to have the court monitor his progress and make sure he does not receive "retaliatory misconducts" while in the program, such does not merit the grant of injunctive relief because the filing of retaliatory misconducts is speculative at best.

Insofar as he seeks to have an outside consult with a neurologist, again, we find that Plaintiff's showing of an Eighth Amendment violation with respect to whether he gets to see a neurologist is lacking. He has not convinced the court that there is a reasonable likelihood of success on this claim.

Lastly, as to Plaintiff seeking to have his pain addressed by steroid injections into his lumbar spine, we find that absent any expert testimony that this is necessary, and in light of the medical record showing Plaintiff is being treated for his pain, Plaintiff is not likely to succeed on the merits of this claim. Aruanno v. Glazman, 316 F.App'x 194, 195 (3d Cir. 2009) ("whether we view his claim as an Eighth Amendment claim based on the prohibition against cruel and unusual punishment, or as a substantive due process claim, Aruanno can not survive the defendants' motion for summary judgment absent expert testimony that would dispute the defendants' assertions that the treatment he received was medically necessary.")(citing Boring v. Kozakiewicz, 833 F.2d 468 (3d Cir. 1987))..

Thus, for any or all of the foregoing reasons, Plaintiff fails to carry his burden to show a likelihood of success on the merits as to his claims.

However, even if the court were to find that Plaintiff carried his burden of showing a reasonable probability of success on the merits as to his claims, he would still not merit the grant of a PI as he failed to make adequate showings with respect to the remaining three prongs.

### B. Irreparable Harm

None of Plaintiff's claims are sufficient to show irreparable harm. Plaintiff suggests irreparable harm in the form of suffering permanent disability by the Defendants' alleged failure to adequately address Plaintiff's medical disabilities.

However, given the evidence of record proffered by the DOC defendants of Plaintiff's extensive receipt of medical treatment, it does not appear that Plaintiff is likely to suffer irreparable harm, because, as the DOC defendants indicate, "Plaintiff will suffer no harm, irreparable or not, if the injunctive relief is denied because, again, the premise underlying Plaintiff's motion is false. The Defendants have taken extraordinary steps to meet Plaintiff's needs. Plaintiff will not suffer any harm because he has received, is now receiving, and will continue to receive expert medical care. . . ." ECF No. 37 at 5, ¶ 13. At the very least, this evidence causes the court to have doubts that Plaintiff will suffer irreparable harm.

Furthermore, even if Plaintiff had made a sufficient showing of suffering from some potential irreparable harm, this would not entitle Plaintiff to a PI, for "it is a fundamental principle of equity jurisprudence that even though the plaintiff may have carried the burden of showing irreparable injury, this Court is not required to issue a preliminary injunction." Raitport v. G.M. Corp., 366 F.Supp. 328, 331 (E.D. Pa. 1973). See also Yakus v. United States, 321 U.S. 414, 440 (1944) ("The award of an interlocutory injunction by courts of equity has never been regarded as strictly a matter of right even though irreparable injury may otherwise result to the plaintiff."). Neither would it be sufficient for plaintiff to establish a violation of the law in order for him to merit the grant of a PI. See, e.g., Weinberger v. Romero-Barcelo, 456 U.S. 305, 313 (1982)("a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law."); Prows v. Federal Bureau of Prisons, 981 F.2d 466, 468 (10th Cir.

1992)("under appropriate circumstances, the district court may justifiably withhold injunctive relief altogether even though the law has been violated by the party sought to be enjoined."); Woerner v. United States Small Bus. Admin., 934 F.2d 1277, 1279-80 (D.C.Cir. 1991)(same). Because Plaintiff has not made a sufficient showing of immediate, irreparable harm, the PI should be denied. Alternatively, even if he had made a sufficient showing of irreparable harm, the PI should still be denied because he failed to make a sufficient showing as to the remaining two prongs.

### C. Balancing the Harms

The balancing of harms essentially requires the court to measure the harm to the plaintiff if the preliminary relief is erroneously denied and the harm to the defendant if the preliminary relief is erroneously granted. See Faheem-El v. Klincar, 841 F.2d 712, 717 (7th Cir. 1988)( a preliminary injunction analysis "requires the district court to assess the probability that each party will prevail on the merits and the harm of granting or withholding relief during the pendency of the suit.").

The harms to Plaintiff are potentially substantial. The harms to the Defendants are also substantial. As an erroneously entered PI will deny the right of the sovereign Commonwealth to have her officers exercise their discretion in the difficult task of operating her prisons. See e.g., Marchesani v. McCune, 531 F.2d 459, 461 (10th Cir. 1976)("When a plaintiff seeks to enjoin or prohibit the activity of a government agency, his case must contend with the well-established rule that the government has traditionally been granted the widest latitude in the dispatch of its own internal affairs. *Cafeteria Workers v. McElroy*, 367 U.S. 886 (1961). Accordingly, when due process contentions are raised relative to the operation, maintenance and administration of the penal system, the courts should be acutely aware that caution must be exercised in achieving

a careful balance of the interests of that system as against the interests of the prisoners.").  Of course entering into this calculus of balancing the harms is the likelihood, in fact, that Plaintiff's rights are being violated.  The measurement of whether Plaintiff's rights are being violated  is conducted in the  "reasonable probability of success on the merits" prong.  However, that prong's measurement is not irrelevant to balancing the harms to a plaintiff if the PI were to be erroneously denied and the harms to a defendant if the PI were to be erroneously entered.  Indeed, if it is highly likely that a plaintiff will succeed on the merits, it is more likely that he will suffer harms, i.e., suffer the denial of his rights.  However, the weaker the showing Plaintiff makes as to the reasonable probability of success on the merits the more unlikely it is that he will suffer harms if the PI is denied and the more likely the defendant will suffer harms, i.e., the defendant will be wrongfully denied rights if the PI is erroneously entered.  Instantly, as noted above, most of the claims Plaintiff has made shows little likelihood of success on the merits and thus, it does not appear that Plaintiff will likely suffer harms should the PI be erroneously denied.  As a result, it is more likely that interference with the Defendants' operation of the prison system by issuance of the PI will infringe on the Defendants' rights and thus cause them harm.

### D.  Public Interests

"In considering where the public interest lies, it is essential to evaluate the possible effects upon the public from the grant or denial of injunctive relief."  O'Burn v. Shapp, 521 F.2d 142, 152 (3d Cir. 1975).  Entering a PI against a sovereign's public servants certainly implicates the public's interests.  Illinois Psychological Assoc. v. Falk, 818 F.2d 1337, 1340 (7th Cir. 1987)("The public interest . . .,  a traditional consideration in deciding whether to grant or deny an injunction . . .  and considerations of comity toward the states as sovereign entities (greatly diminished sovereigns, to be sure), support our conclusion that state action should not be

set at naught, even temporarily, without a showing that the plaintiff's legal rights have probably been infringed.").  This is even more true when those public servants are prison administrators and staff.  Wetzel v. Edwards, 635 F.2d 283, 288 (4th Cir. 1980)("federal courts have an additional reason to show deference to the decisions of prison authorities, where a state penal institution is involved . . . .  The possible injury to the defendant-appellants if the preliminary injunction stands is potentially grave.  The informed discretion of these penological experts could be radically limited . . .  with respect to prison discipline in general.").  As the Supreme Court has noted "[p]rison administrators are responsible for maintaining internal order and discipline, for securing their institutions against unauthorized access or escape, and for rehabilitating, to the extent that human nature and inadequate resources allow, the inmates placed in their custody."  Procunier v. Martinez, 416 U.S. 396, 404 (1974), overruled on other grounds by, Thornburgh v. Abbott, 490 U.S. 401 (1989).  Indeed, "[p]rison administrators are specially trained and duly compensated by the public to handle the daily operation and maintenance of maximum security prisons. . . .  In contrast to the vast majority of Federal judges, prison administrators possess a wealth of penological expertise and experience that qualifies them to supervise, discipline, and rehabilitate inmates within an ever-changing, complex prison system."  Godinez v. Lane, 733 F.2d 1250, 1261-61 (7th Cir. 1984).  Judicial deference is accorded their decisions "not merely because the administrator will, as a matter of fact in a particular case, have a better grasp of his domain than the reviewing judge, but also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive branches of our Government, not the Judicial."  Bell v. Wolfish, 441 U.S. 520, 548 (1979).

Of course to be fair, one must consider the other side of the scale of public interest, which is, having a State's employees follow the Federal Constitution is also in the public interest.  See,

e.g., <u>Seattle Audubon Society v. Evans</u>, 771 F.Supp. 1081, 1096 (W.D.Wash. 1991) (where an administrative agency fails to comply with a statute "this invokes a public interest of the highest order: the interest in having government officials act in accordance with the law."), <u>aff'd</u>, 952 F.2d 297 (9th Cir. 1991).  However, the weight a court should accord to the public interest of having state agents comply with federal law is again dependent to some extent on how strong a showing Plaintiff has made with respect to a reasonable probability of success on the merits. The stronger the showing of success on the merits, the more weight the court will accord to the public interest in having federal law followed.  As noted above however, Plaintiff's showing of success on the merits was generally wanting.  Plaintiff has simply failed to carry his burden to show that granting the PI would not adversely affect the public interest.  To the contrary, the public interest in this case appears to weigh in favor of the court exercising its discretion to refrain from interfering with the state officials' operation of the Commonwealth's penal system, at least until  an adjudication on the merits can be had, or alternatively, the case terminates upon dispositive motions.   Thus, the public interest weighs in favor of denying the PI.

As the equities of this case all tend to weigh in favor of denying the PI, the Court enters the following order:

**AND NOW** this 10th day of January, 42011, Plaintiff's motion for preliminary injunction, ECF No. 78 is hereby **DENIED**.

_____
Lisa Pupo Lenihan
Chief U.S. Magistrate Judge

cc:    David Michael Glatts
       GZ-0144
       SCI Greensburg

165 SCI Lane
Greensburg, PA 15601

Counsel of Record via CM-ECF