IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID MICHAEL GLATTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 09-29 |
| | ) | |
| SUPERINTENDENT LOCKETT; MR. | ) | Chief Magistrate Judge Lenihan |
| MATTHEWS (AOD Director); DR. | ) | |
| CAIRINS, Director of Psychology | ) | |
| Department; MS. KWISNEK (ADA | ) | |
| Facilitator Director); DEPUTY | ) | |
| SUPERINTENDENT TREVOR | ) | |
| WINGARD; DR. McGRATH (Medical | ) | |
| Director); PRISON HEALTH SYSTEMS | ) | |
| (PHS), | ) | |
| | ) | |
| Defendants. | ) | Re ECF Nos. 65 and 68 |

## <u>MEMORANDUM OPINION AND ORDER</u>

David Michael Glatts, ("Plaintiff") initiated this civil rights suit pursuant to 42 U.S.C. §

1983 on January 12, 2009, complaining of conditions at SCI-Greensburg, where Plaintiff was

housed during the events that gave rise to this lawsuit.   The operative complaint, ECF No. 59,

named fourteen defendants.   Twelve of the defendants appear to be employees or entities of the

Pennsylvania Department of Corrections ("DOC"), collectively, the "DOC Defendants".    The

remaining two defendants are Dr. McGrath, an independent contractor-physician at

SCI-Greensburg, who treated Plaintiff, and Prison Health Services, Inc. ("PHS"), collectively, "the

Medical Defendants".   PHS is the independent contractor that DOC contracted with to provide

medical services at SCI-Greensburg.

The Medical Defendants filed a motion to dismiss, ECF No. 65, pursuant to Fed.R.Civ.P.

12(b)(6), arguing that Plaintiff's complaint failed to state a claim as to PHS because the complaint

failed to allege that a PHS policy caused Plaintiff an injury.   They also argued that, as to Dr.

McGrath, the complaint failed to state an Eighth Amendment claim because it failed to allege that he possessed the requisite subjective mindset and that the complaint failed to allege sufficient facts to state a retaliation claim.

The DOC Defendants also filed a motion to dismiss, ECF No. 68, pointing out that because Plaintiff's complaint demonstrated that he was being treated by medical personnel, the DOC defendants had no reason to know that he was being deprived of any of his constitutional rights and therefore, the complaint fails to show the subjective prong on the DOC Defendants' part as to Plaintiff's Eighth Amendment deliberate indifference claim. The DOC Defendants also argued that Plaintiff failed to state a claim of disability discrimination under Title II of the Americans with Disabilities Act ("ADA") because the individual defendants did not constitute a "public entity," as is required to maintain liability under Title II.

Because we find that Plaintiff failed to allege a policy against PHS so as to state a claim against PHS, the complaint will be dismissed with prejudice as against PHS. Because the complaint fails to allege anything more than negligence against Dr. McGrath, the complaint will be dismissed as to him on the Eighth Amendment claim with prejudice. Because the DOC Defendants knew that Plaintiff was being treated by medical personnel and the DOC Defendants had no reason to believe that Plaintiff was being mistreated, the Eighth Amendment claim must be dismissed as against them. As to Plaintiff's retaliation claim against Dr. McGrath, it will be dismissed albeit without prejudice for factual insufficiency. Plaintiff's Title II ADA claims will be dismissed against the DOC defendants in their individual capacities but not in their official capacities. Plaintiff's retaliation claims against the DOC Defendants will also be dismissed against them, albeit without prejudice due to factual insufficiency.

**Relevant Procedural History**

Proceeding *pro se* and *in forma pauperis*, Plaintiff filed his original complaint. ECF No. 4. After the Defendants filed motions to dismiss, directed to the original complaint, ECF Nos. 22 and 24, Plaintiff filed an amended complaint, ECF No. 59, which is the operative complaint. Plaintiff also filed a "supplement" to the complaint, which merely added, *inter alia*, some copies of his grievances. ECF No. 60.

The Medical Defendants filed a motion to dismiss, ECF No. 65, directed to the operative complaint, and a brief in support, along with evidentiary materials.[1] ECF No. 66. The DOC Defendants also filed a motion to dismiss, ECF No. 68, and a brief in support. ECF. No. 69. Plaintiff filed a response to the motions, ECF No. 72, and an appendix, ECF No. 73, and subsequently, a supplement. ECF No. 80.

**Applicable Legal Standards**

As the United States Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), a complaint may properly be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974 (rejecting the traditional 12 (b)(6) standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)). Under this standard, the court must, as a general rule, accept as true all factual allegations of the complaint and all reasonable inferences must be viewed in the light most favorable to plaintiff. <u>Angelastro v. Prudential-Bache Securities, Inc.</u>, 764 F.2d 939, 944 (3d Cir. 1985). Nevertheless, under the 12(b)(6) standard, a "court need not . . . accept as true allegations that contradict matters

---

[1] Because the Court did not treat the Medical Defendants' motion to dismiss as one for summary judgment, any evidentiary materials produced by the Medical Defendants, not properly considered on a motion to dismiss, will not be considered in disposing of the motions at bar.

properly subject to judicial notice or by exhibit." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), *amended by,* 275 F.3d 1187 (9th Cir. 2001). Nor must the Court accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). Furthermore, it is not proper for a court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." Assoc.'d Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

The Supreme Court refined its standard for summary dismissal of a complaint that fails to state a claim in Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937 (May 18, 2009). Expanding on its decision in Twombly, the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice…. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-50. To meet Fed.R.Civ. P. No. 8(a)(2)'s notice pleading requirements, "the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the ... claim is and the grounds upon which it rests,'" Twombly, 550 U.S. at 555 (*quoting* Conley v.

Gibson, 355 U.S. 41, 47 (1957)).   See also 5C Wright & Miller, Federal Practice and Procedure §
1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule
12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted).

In addition to the complaint, courts may consider matters of public record and other matters
of which a court may take judicial notice, court orders, and items appearing in the record of the
case when adjudicating a motion to dismiss under Rule 12(b)(6).   Winer Family Trust v. Queen,
503 F.3d 319, 328 -29 (3d Cir. 2007); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380,
1385 n.2 (3d Cir. 1994)(in adjudicating motions to dismiss, courts may "consider matters of public
record, orders, exhibits attached to the complaint and items appearing in the record of the case.").
In addition, the Court of Appeals in Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004), held that a
"defendant may submit an indisputably authentic [document] to the court to be considered on a
motion to dismiss[.]"

The question to be resolved is: whether, taking the factual allegations of the complaint,
which are not contradicted by the indisputably authentic exhibits and matters of which judicial
notice may be had, and taking all reasonable inferences to be drawn from those uncontradicted
factual allegations of the complaint, are the "factual allegations . . . enough to raise a right to relief
above the speculative level, on the assumption that all the allegations in the complaint are true even
if doubtful in fact[.]"   Twombly, 550 U.S. at 555.   Or, put another way, a complaint may be
dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be
granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Id. at
570.

In addition, because Plaintiff was, at the time of the filing of this civil action,[2] a prisoner

and because he named governmental entities or employees thereof as defendants, the screening

provisions of the Prisoner Litigation Reform Act ("PLRA") found at 28 U.S.C. § 1915A apply

herein.   In addition, because he was a prisoner, granted leave to proceed in forma pauperis to

prosecute this suit, the screening provisions of 28 U.S.C. § 1915(e) also apply.   Lastly, because he

was a prisoner who filed a civil rights action, complaining of prison conditions, the screening

provisions of 42 U.S.C. § 1997e apply.   The court's obligation to dismiss a complaint under the

PLRA screening provisions for complaints that fail to state a claim is not excused even after

defendants have filed a motion to dismiss.   See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th

Cir. 2000).   Hence, if there is a ground for dismissal which was not relied upon by a defendant in

a motion to dismiss, the court may nonetheless *sua sponte* rest its dismissal upon such ground

pursuant to the screening provisions of the PLRA.   See Lopez; Dare v. U.S., CIV.A.06-115E,

2007 WL 1811198, at *4 (W.D.Pa. June 21, 2007), *aff'd*, 264 F.App'x 183 (3d Cir. 2008).

**DISCUSSION**

Plaintiff's amended complaint alleges essentially three claims against the Defendants.

His first claim is an Eighth Amendment deliberate indifference claim.[3]   His second claim is a

---

[2]   See, e.g., In re Smith, 114 F.3d 1247, 1251 (D.C. Cir. 1997)("If a litigant is a prisoner on the day he files a civil action, the PLRA applies.");   Colby v. Sarpy County, No. 4:01CV3130, 2006 WL 519396, at *1 (D. Neb. March 1, 2006)("The status of the plaintiff at the time the lawsuit is initiated, i.e., whether the plaintiff is incarcerated when the complaint is filed, determines whether the PLRA applies to a case.").

[3]   Plaintiff sets forth his Eighth Amendment claim as two different "counts" in the operative complaint.   The first count is denominated as "Inadequate Medical Care . . . ." ECF No. 59 at 10 to 11, ¶¶ 36 to 41.   The second "count" is denominated as "Bre[a]ch of Duty to Protect," id., at 12, ¶ 46, alleging that the Defendants failed to protect Plaintiff "from personal injury . . . by denying the Plaintiff's continuous pleas for help." Id. (capitalization changed).   We agree with the DOC

(footnote continued on next page)

claim under Title II of the Americans with Disabilities Act ("ADA), alleging failure to
accommodate his disabilities in a drug and alcohol abuse program.   His third claim is a claim that
he was retaliated against for the filing of this suit and for complaining of his medical treatment or
lack thereof.   By way of relief, Plaintiff seeks compensatory damages, attorney's fees, as well as
costs of the suit.   ECF No. 59 at 14.

### a. Eighth Amendment claims

Plaintiff's Eighth Amendment deliberate indifference claims are based on the following
factual allegations.   Plaintiff came into DOC custody in March 2007 with a diagnosis of major
depression.   In November 2007, Plaintiff developed paralysis in his left leg, resulting in foot drop.
Plaintiff told Dr. McGrath that he had previous back problems.   Plaintiff also informed Dr.
McGrath, that in 2001, another doctor told Plaintiff that he had herniated and degenerative discs in
his lumbar spine but that surgery would not be required until Plaintiff developed weakness or
paralysis in his lower legs.   ECF No. 59 at 5. Essentially, Plaintiff complains that upon Dr.
McGrath learning of Plaintiff suffering from lower leg paralysis, Dr. McGrath should have
immediately ordered spine surgery for Plaintiff in accord with what Plaintiff's prior doctor had
recommended.   Dr. McGrath ordered Plaintiff's past medical records.   In January 2008,
Plaintiff's paralysis worsened and he was given a leg splint for his left leg, but Plaintiff complains
that the splint did not fit properly, which resulted in him developing diabetic foot ulcers.   An MRI
was ordered by the Defendants, which showed degenerative discs, a herniated disc and a bulging
disc in Plaintiff's lumbar spine.   Id.   Although Plaintiff alleges that he began to request further
consultations, all requests were denied.   Plaintiff does not allege from whom he requested these

---

Defendants that this so-called "failure to protect" count is nothing more than an Eighth
Amendment deliberate indifference claim. ECF No. 69 at 2.

Amendment deliberate indifference claim. ECF No. 69 at 2.

further consultations or who denied them.

In March 2008 Plaintiff was given an EMG test, which is a test allegedly done to show nerve function in Plaintiff's lower legs. Plaintiff alleged that the EMG test results showed severe nerve damage in both of Plaintiff's lower legs along with severe muscle atrophy. A Dr. Androkites performed a physical exam on Plaintiff. Plaintiff also alleged that the paralysis was progressing to Plaintiff's right leg, also causing foot drop in the right leg. Consequently, Plaintiff complains that he was having severe gait instability. Again, Plaintiff contends that all of his requests for consultations with a neurologist, physical therapist, and pain management specialist were denied. This time, Plaintiff specifies that his requests were denied by Dr. McGrath, PHS, Defendant Kwisnek, and the Administrative Staff at SCI-Greensburg. Id.

In April 2009, Plaintiff asserts that his gait was so unstable that he sustained a right foot fracture that resulted in a fall. Id. at 7. Plaintiff was given an x-ray that showed a fracture of his small toe. Plaintiff waited eight days to see an orthopedic surgeon who casted Plaintiff's foot. Upon Plaintiff's return to SCI-Greensburg from the casting, Plaintiff was placed in the restricted housing unit. Plaintiff began to file grievances and was given a "retaliatory transfer" to SCI Fayette, with a report from Dr. McGrath and Ms. Kwisnek that Plaintiff was indulging in self harm. On arrival at SCI-Fayette, Plaintiff was put into a psychiatric observation cell for three days, until he was then transferred to the infirmary. Plaintiff spent one month at SCI-Fayette. Plaintiff alleged that SCI-Fayette staff told him that they had no idea why Plaintiff was transferred to SCI-Fayette but that Ms. Kwisnek has had problems in the past with this same type of behavior. ECF No. 59 at 7.

In May 2009, Plaintiff had an appointment with his orthopedic surgeon who informed Plaintiff that he had a non-union of the fracture in his right little toe that would require surgery.

The Doctor instructed Plaintiff that he can walk with crutches and shower and go to the yard, i.e., participate in outside recreation. However, upon returning to SCI-Greensburg, those instructions were disregarded and Plaintiff was placed on block restriction, and was not permitted to shower. Id. at 7. Plaintiff continued to file grievances concerning his gait instability, which he asserts caused him the right foot fracture. Plaintiff also complains that he needed to have a consultation for his back. Again, he asserts that his requests are denied.

On May 29, 2009, Plaintiff had the surgery to his right small toe and a screw was placed in it to help heal the bone and address the non-union of the bone. Upon return to SCI-Greensburg, Dr. McGrath ordered a change in the pain management regime ordered by Plaintiff's surgeon. Plaintiff complains that the changed order was "sub-therapeutic" and Plaintiff began to have "severe surgery [sic, probably meant "pain"] only five hours post op[.]" ECF No. 59 at 8 (capitalization changed). Plaintiff contends that he informed some unnamed nurse on the second shift about his pain and she refused to call Dr. McGrath and tell him of Plaintiff's circumstances. Id. Later in the complaint, Plaintiff asserts that the nurse did call Dr. McGrath but that he refused to increase the pain medication. ECF No. 9 at 13, ¶ 49. The next morning another physician came on duty and doubled Plaintiff's pain medication.

Plaintiff's first post-operative visit was in July 2009 and his orthopedic surgeon told him that the bone was still not healing even with the surgical screw and Plaintiff would need a bone growth stimulator applied to his right foot twenty minutes daily. Upon Plaintiff's return to SCI-Greensburg, the order for bone growth stimulator was denied by PHS and Dr. McGrath. Id. at 8. Plaintiff complained that as of the date of writing the amended complaint, he still suffered from a non-union of the foot fracture. Id.

In November 2009, another MRI was ordered that showed significant worsening of

Plaintiff's lumbar spine and Plaintiff was told that he will need major spine surgery. In January 2010, Plaintiff was seen by a spine surgeon who told Plaintiff he will need a two level laminectomy and a discectomy. The spine surgeon further informed Plaintiff that due to the two year delay in treatment for the spine, Plaintiff will likely suffer permanent disability but that surgery is still the best option to prevent further damage. Id. at 9. Plaintiff's requests for consultations with a neurologist and neurosurgeon, (apparently wanted by Plaintiff to weigh the pros and cons of the proposed spine surgery) were denied.

On March 9, 2010, Plaintiff underwent spine surgery but Plaintiff complains that as of the date of writing the complaint, i.e., April 13, 2010, he still had the same level of paralysis in both of his lower legs. Upon discharge from the hospital, Plaintiff was transferred to SCI-Laurel Highlands, which the Court notes is one of the DOC prisons specially equipped for elderly and medically needy prisoners. Plaintiff was given a wheelchair for traversing longer distances and he started physical therapy. The physical therapist told Plaintiff that due to the two year delay in obtaining the spinal surgery, Plaintiff may suffer a permanent disability. Eventually, Plaintiff was transferred back to SCI-Greensburg.

Plaintiff complained that he still suffered from a non-union of the right small toe fracture, which gives Plaintiff pain during walking and physical therapy.

Plaintiff alleges that Dr. McGrath showed deliberate indifference to Plaintiff by ignoring Plaintiff's medical tests and obvious medical symptoms when Dr. McGrath was made aware of Plaintiff's problems in November 2007, when Plaintiff developed paralysis in his left leg and Plaintiff informed Dr. McGrath of the previous instruction by another doctor that if Plaintiff develops paralysis in his lower legs, Plaintiff will need immediate surgery. Plaintiff alleges that despite Dr. McGrath knowing this, Dr. McGrath ignored all of Plaintiff's complaints and requests,

thereby delaying the necessary surgery by two years.

As to PHS, Plaintiff alleges that PHS has policies in place to limit consultations and to reduce cost in a managed care system.

The foregoing is alleged to state an Eighth Amendment deliberate indifference claim.

The Supreme Court has explained that analysis of a violation of the Eighth Amendment standards involves a two pronged inquiry: 1) an objective inquiry into the qualitative nature of the harm suffered by the victim of the alleged punishment and 2) a "subjective inquiry" into the mind of the person inflicting the harm. See Wilson v. Seiter, 501 U.S. 294 (1991).

In cases, such as this one, which involves a purported denial of medical care, to prove the subjective component of an Eighth Amendment claim, a plaintiff has the burden of proving that the defendant acted with deliberate indifference. Estelle v Gamble, 429 U.S. 97 (1976); Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001). "Deliberate indifference" occurs when a prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). As a corollary of the deliberate indifference standard, negligence by staff at the prison, medical personnel and physicians in treating prisoners is not sufficient to state an Eighth Amendment violation. Estelle, 429 U.S. at 105-06.

In the motion to dismiss, PHS points out that the complaint fails to state a claim against it because the complaint fails to adequately identify a PHS policy which unconstitutionally caused Plaintiff harm. PHS is correct. Natale v. Camden County Corr. Facility, 318 F.3d 575, 583 - 84 (3d Cir. 2003) ("PHS cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability. In order for PHS to be liable, the Natales must provide

evidence that there was a relevant PHS policy or custom, and that the policy caused the

constitutional violation they allege.") (footnote and citations omitted). In addition, because

Plaintiff is making an Eighth Amendment claim, he must allege PHS possessed the required

subjective mindset. See, e.g., Miller v. Hoffman, No. Civ.A. 97-7987, 1998 WL 404034, at *5

(E.D. Pa. July 7, 1998) ("To meet this burden with respect to a private corporation, the plaintiff

must show that the corporation, 'with deliberate indifference to the consequences, established and

maintained a policy, practice or custom which directly caused [plaintiffs'] constitutional harm.'")

(some internal quotations omitted and altered). PHS asserted that an "examination of the

amended complaint shows no mention of any policy or practice of PHS[;] Glatts never identifies

such a policy or practice." ECF No. 66 at 11. However, Plaintiff does, in a conclusory fashion,

allege a policy. ECF No. 59 at 10 (PHS has "policys [sic] in place to limit consultations to reduce

cost in a managed care system"). In fact, in his response to the motion to dismiss, Plaintiff

confirms, in conclusory fashion, that "there is a managed care system with polocies [sic] and

procedures designed to manage cost and thereby limit consultations, in order to make a profit.")

ECF No. 72 at 1.[4]

    This is, however, inadequate to state an Eighth Amendment claim against PHS. This is so

because we find that such a policy of providing economic incentive to keep costs under control, a

policy that even the complaint implicitly acknowledges is not uncommon practice in managed care

---

[4] In light of this being Plaintiff's only response to PHS's argument concerning a policy, we find
that any attempted further amendment of the complaint with respect to PHS would be futile. Golod
v. Bank Of America Corp., __ F. App'x __, 2010 WL 5065102, at *3 (3d Cir. 2010) ("Despite
several opportunities to do so, Golod has failed to articulate throughout the proceedings before the
District Court and this Court the substance of any proffered amendments to her discrimination and
retaliation claims[.] Thus, there is no reason to believe that, on remand, she can make averments
sufficient to nudge her claims across the line from conceivable to plausible. The District Court
correctly determined that further amendment would be futile.").

providers, such as in HMOs outside of the prison context, (a fact of which this Court takes judicial notice), simply lacks the requisite subjective component so as to state an Eighth Amendment claim of deliberate indifference, especially given the fact that Plaintiff did receive his surgery, albeit, according to him, belatedly.   See Winslow v. Prison Health Services, __ F.App'x __, 2011 WL 167280 (3d Cir. Jan. 20, 2011); Brightwell v. Lehman, No. Civ.A. 03-205J, 2006 WL 931702, at *8 (W.D. Pa. April 10, 2006) ("That cost is a factor in the provision of treatment outside the prison walls supports this conclusion [that disagreement over which drugs to administer simply does not demonstrate the deliberate indifference necessary to state an Eighth Amendment claim]. Resources are not infinite and reasonable allocation of those resources, taking into account cost, does not amount to deliberate indifference even if a prisoner does not receive the most costly treatments or his treatment of choice.").   In other words, given that cost is a factor in treatment of non-incarcerated individuals, the fact that PHS allegedly has a policy, which takes into account costs in its management of health care services to incarcerated persons, simply does not evince the requisite deliberate indifference.

We find the case of Winslow v. Prison Health Services, __ F.App'x __, 2011 WL 167280 (3d Cir. Jan. 20, 2011) instructive.   In that case, the prisoner alleged that he had been diagnosed with a hernia and that there was a delay in treating the hernia, despite the fact that he was eventually provided a hernia belt but no surgery for the hernia.   Plaintiff alleged that he was harmed by PHS "policies to save money[.]"   Id., at *3.   The Court of Appeals held that complaint failed to state a claim.   Id. ("the District Court correctly ruled that Winslow had failed to state a claim").   The Court of Appeals explained that

> For one thing, the complaint's allegation that Winslow was
> harmed by "policies to save money" is exceedingly conclusory; the
> complaint does not provide any indication either of (1) what the

relevant policies are, (2) what basis he has for thinking that "policies to save money" affected his medical treatment, or (3) what specific treatment he was denied as a result of these policies. More fundamentally, the naked assertion that Defendants considered cost in treating Winslow's hernia does not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment. *See Reynolds v. Wagner*, 128 F.3d 166, 175 (3d Cir.1997) ("[T]he deliberate indifference standard of Estelle does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society."); *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The cost of treatment alternatives is a factor in determining what constitutes adequate, minimum-level medical care, but medical personnel cannot simply resort to an easier course of treatment that they know is ineffective." (citations omitted)); *Caines v. Hendricks*, No. 05-1701, 2007 WL 496876, at *8 (D.N.J. Feb.9, 2007) ("[I]t is not a constitutional violation for prison authorities to consider the cost implications of various procedures, which inevitably may result in various tests or procedures being deferred unless absolutely necessary.").

Id. We find that the same reasoning applies here and so, Plaintiff's Eighth Amendment claim must be dismissed as against PHS.

As for Dr. McGrath, the strongest factual allegation against him is that Plaintiff informed Dr. McGrath in November 2007 that Plaintiff's prior treating physician said that if Plaintiff experiences weakness or paralysis in his lower legs, Plaintiff would need immediate surgery and, that Dr. McGrath did not order immediate surgery when Plaintiff developed lower leg paralysis. However, we find this allegation, states, at most, a claim of medical negligence, given that, at most, the complaint alleges disagreements between Dr. McGrath and Plaintiff's prior treating physician. DeFranco v. Wolfe, 387 F.App'x 147, 158 (3d Cir. 2010) ("disagreement of professional opinion among doctors does not equal deliberate indifference"). Indeed, in light of Plaintiff's allegations concerning his frequent testing, MRIs, EMG's and differing treatment

modalities, including the provision of leg supports (even if they were ill-fitting and even if he did not get a wheel chair as he had wanted), Plaintiff's allegations amount to, at most, allegations of medical negligence or malpractice and not, deliberate indifference.

The other strong allegation against Dr. McGrath is that upon Plaintiff's return from his orthopedic surgery to put a screw into his right small toe, Dr. McGrath altered the pain medication ordered by the orthopedic surgeon, cutting the pain medication in half, and Dr. McGrath allegedly did so without examining Plaintiff. ECF No. 59 at 8. Plaintiff also alleges that he told the nurse on the second shift about his being in pain and that she eventually called Dr. McGrath but that he refused to increase the pain medication. Id. at 13. Plaintiff alleges that the following morning, another physician came on duty and increased the pain medication but still not to the original level ordered by the orthopedic surgeon. Id. Again, we find these factual allegations simply inadequate to state an Eighth Amendment claim. It is undisputed that Plaintiff received pain medication, and the difference in amount ordered by Dr. McGrath and the orthopedic surgeon is simply a professional disagreement and not sufficient for deliberate indifference. As for the allegation that Dr. McGrath made the change without examining Plaintiff and that Dr. McGrath refused to alter the medication amount after the nurse on the second shift contacted Dr. McGrath, although a closer call, we again find that this states, at most, a negligence claim, given Dr. McGrath's knowledge that another physician would be seeing Plaintiff early the next morning, who could then address the pain issue more properly in person. We further note that given Dr. McGrath's knowledge of Plaintiff as being a former drug abuser, his judgment as to the amount of narcotic pain medication may well have been informed by such knowledge. See ECF No. 59 at 4 (complaint describing Plaintiff as having a "history of drug dependency"). Drawing on our judicial experience and exercising common sense, Iqbal, 129 S.Ct. at 1950, we find none of the

factual allegations against Dr. McGrath sufficient to state an Eighth Amendment claim of deliberate indifference, and such claims against him must be dismissed.

The DOC Defendants moved to dismiss Plaintiff's Eighth Amendment claims against them based on the rule that since they knew Plaintiff was being seen, examined and treated by medical personnel, just like the complaint recounts, the DOC Defendants, being mere lay people, cannot be deliberately indifferent for failing to intervene in that treatment themselves, notwithstanding Plaintiff's complaints about his treatment to them.   The DOC Defendants are correct.

The general rule is that where a prisoner is being treated by medical personnel, non-physician prison officials cannot be deliberately indifferent for failing to intervene in the medical treatment.   See, e.g., Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) ("The only allegation against either of these two [prison official] defendants was that they failed to respond to letters Durmer sent to them explaining his predicament.   Neither of these defendants, however, is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.") (footnoted omitted); Thomas v. Zinkel, 155 F.Supp.2d 408, 413 (E.D. Pa. 2001) ("Prison authorities who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.   Similarly, health care administrators cannot be found deliberately indifferent when an inmate is receiving care from a doctor.") (internal citations and quotations omitted).   This rule makes sense because a non-physician layperson cannot be deliberately indifferent to a prisoner's medical needs when he knows that the prisoner is being seen by and treated by physicians and/or receiving treatment ordered by a physician, notwithstanding the prisoner's complaints about the physician's treatments and/or alleged mis-diagnosis because a

non-physician layperson has no expertise whereby to judge the adequacy *vel non* of a physician's treatment.

The Court of Appeals did explain the above general <u>Durmer</u> rule is not an absolute rule. In <u>Spruill</u>, the Court held that

> absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official like Gooler will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

<u>Spruill v. Gillis</u>, 372 F.3d 218, 236 (3d Cir. 2004).

Here, the complaint fails to reveal a sufficient factual allegation that the DOC defendants had reason to believe or actual knowledge that Dr. McGrath was mistreating Plaintiff, especially since Plaintiff had been offered tests (i.e., MRIs and an EMG) and assistive devices and outside surgeries (two, in fact, one for his fractured small right toe, and one for his back). It is true that Plaintiff filed grievances, and made complaints to the DOC defendants, which may have provided knowledge to those DOC defendants that Plaintiff was dissatisfied with the medical orders of Dr. McGrath, but more is needed than this, otherwise every time a prisoner complains about his treatment, such would be sufficient to render the non-medical personnel liable, which is clearly not the rule under <u>Durmer</u>. Instead, the Eighth Amendment requires sufficient factual allegations that show the existence of a subjective prong, i.e., deliberate indifference. Here, for all the complaint alleges, the DOC defendants, in response to the grievances, performed their investigation, and simply found that Dr. McGrath's medical judgment to be more credible and persuasive as to what Plaintiff medically needed than that of Plaintiff's opinion or judgment as to what Plaintiff needed medically. The fact that the DOC Defendants apparently gave credence to a medical doctor's opinion over that of a prisoner's opinion as to the appropriate course of treatment, simply does not

demonstrate the kind of subjective mindset necessary to make out an Eighth Amendment claim. The grievances Plaintiff filed and the investigations prompted by Plaintiff's grievances did not appear to provide a reason to the DOC Defendants to know that Dr. McGrath was allegedly mistreating Plaintiff.

In the alternative, although not raised by the Defendants,[5] we find that even if the complaint could be found to have sufficiently alleged an Eighth Amendment violation, all the DOC Defendants[6] would be entitled to dismissal of those claims against them based upon qualified good faith immunity. Based upon the factual allegations contained in the amended complaint, it would not have been clear to a reasonable official in the shoes of the DOC Defendants that their actions or inactions violated any of Plaintiff's clearly established constitutional rights. It is appropriate to consider qualified immunity at this juncture. Giles v. Kearney, 571 F.3d 318, 325 (3d Cir. 2009) ("Qualified immunity is a complete immunity from suit, not just a defense to liability, and is considered at the earliest possible stage of proceedings").

**b.  ADA Claim under Title II**

Next, we take up Plaintiff's disability discrimination claim under Title II of the ADA. Plaintiff actually makes two claims under the ADA. One claim is made under Title II of the ADA where he claims he was denied participation in an alcohol/drug abuse program because his

---

[5]   This Court may *sua sponte* raise the qualified good faith defense pursuant to the screening provisions of the PLRA. Doe v. Delie, 257 F.3d 309, 312 (3d Cir. 2001) (noting that after the defendants had filed a motion to dismiss, the "Magistrate Judge found, sua sponte, that defendant Zimmerman was entitled to qualified immunity for her alleged misconduct and recommended dismissal of the complaint against her pursuant to 28 U.S.C. §1915(e)(2)(B)(ii).").

[6]   PHS and Dr. McGrath, being private contractors and, not governmental employees/entities, may not have available to them the defense of qualified immunity. See Richardson v. McKnight, 521 U.S. 399 (1997); Miller v. Beard, 699 F.Supp.2d 697, 712 (E.D. Pa. March 18, 2010).

disabilities were not accommodated in the program. The second claim is a claim under Title V of the ADA, that Plaintiff was retaliated against by the Defendants because Plaintiff raised a claim and invoked his rights under the ADA.

As to the claim under Title II of the ADA, Plaintiff's complaint alleges that in June 2008, he began the Therapeutic Community ("TC") program which is a six month drug and alcohol abuse treatment program. ECF No. 59 at 6. He claims he was expelled from the program in September 2008, id., but would have been permitted to re-apply to take part in the program after 60 days. Plaintiff felt that he had disabilities and he was being discriminated against based upon his disabilities which made it more difficult for him to complete the TC program. Id. at 7. Reading the complaint in a light most favorable to Plaintiff, he appears to be claiming that the Defendants failed to accommodate his disabilities in order for him to be able to participate in the TC or that they failed to offer him other alcohol/drug treatment programs that might better meet his disability needs.

In their motion to dismiss, the DOC Defendants note, and Plaintiff does not dispute, that his Title II ADA claims appear to be limited to suing the following five DOC Defendants: Matthews, Price, Lockett, Wingrad and Seckers. ECF No. 69 at 10. See also ECF No. 59 at 12 (the complaint's ADA claims "count").

The ADA provides in relevant part that:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

In their motion to dismiss, the DOC Defendants raise only one defense to Plaintiff's claims

under Title II of the ADA, i.e., they note that Plaintiff cannot sue individual persons under Title II of the ADA because such persons do not constitute a "public entity" within the meaning of Title II. ECF No. 69 at 6.   While this is true, the DOC Defendants' argument ignores the fact that Plaintiff sued these five individuals in both their individual and official capacities, and a suit against a DOC employee in his or her official capacity is simply another way of suing the employer,[7] which, in this case, is DOC.   DOC indisputably constitutes a "public entity" within the ADA.   Hence, the DOC Defendants' motion to dismiss the Title II ADA claims against the five defendants in their official capacities will be denied.   However, it will be granted as to the five defendants in their individual capacities, because, in their individual capacities, they do not constitute a "public entity." Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999) ("[W]e agree ... that the commissioners may not be sued in their individual capacities directly under the provisions of Title II. Title II provides disabled individuals redress for discrimination by a 'public entity.' That term, as it is defined within the statute, does not include individuals."); Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) ("Insofar as Garcia is suing the individual defendants in their individual capacities, neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials."); George v. Pennsylvania Dept. of Corrections, Civil No. 3:CV-09-1202, 2010 WL 936778, at *7 (M.D.Pa.

---

[7] See, e.g., Hafer v. Melo, 502 U.S. 21, 25 (1991) ("official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' . . . Suits against state officials in their official capacity therefore should be treated as suits against the State.") (some quotation marks altered); Banks v. Mozingo, No.1:08cv004, 2009 WL 497572, at *4 (W.D.Pa., Feb. 26, 2009) ("Official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. . . .In the case at bar, the Plaintiff's official capacity claims against the DOC Defendants should be construed as claims against the Pennsylvania Department of Corrections.").
.

March 11, 2010) ("Under Title II of the ADA, plaintiffs may not sue individual defendants in their personal capacities, but must instead sue the state, state entities, or defendants in their official capacities").

### c. Retaliation Claims

We next take up Plaintiff's retaliation claims. It is not entirely clear from the complaint, but it appears that Plaintiff is making both a First Amendment retaliation claim under Section 1983 and a retaliation claim under Title V of the ADA.[8] See ECF No. 59 at 13. In contrast to discrimination claims under Title II of the ADA, claims for retaliation and/or coercion under Title V of the ADA are viable against natural person individuals sued in their individual capacities. See Lauren W. ex rel. Jean W. v. Deflaminis, 480 F.3d 259, 267 n.5 (3d Cir. 2007) ("The anti-retaliation regulation implementing section 504 states: No recipient **or other person** shall intimidate, threaten, coerce, or discriminate against any individual for the purposes of interfering

---

[8] Title V of the ADA provides as follows:

> (a) Retaliation
> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
> (b) Interference, coercion, or intimidation
> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.
> (c) Remedies and procedures
> The remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b) of this section, with respect to subchapter I, subchapter II and subchapter III of this chapter, respectively.

42 U.S.C. § 12203.

with any right or privilege secured by [the Act], or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing....") (quoting 34 C.F.R. 100.7(e))(emphasis added)); <u>Thomas v. Pennsylvania Dep't of Corr.</u>, CIV.A. 07-40J, 2008 WL 68628, at *5 (W.D.Pa. Jan. 4, 2008) ("individual capacity suits under the provisions of the ADA and the Rehabilitation Act relating to retaliation/coercion claims are permitted.") (collecting cases).

We have carefully reviewed Plaintiff's allegations of retaliation. ECF No. 59 at 13. We find that they amount to no more than mere legal conclusions of the form that "Defendant X retaliated against Plaintiff," without specifying any facts as to what specific action of the Plaintiff prompted the alleged retaliation, when the action(s) of the Plaintiff occurred, when the alleged retaliation of the Defendant took place, how the Defendant came to be aware of the actions of Plaintiff, which allegedly prompted the Defendant to take the retaliatory act. In sum, Plaintiff's retaliation allegations fail to give the Defendants fair notice of his claims as required by Fed.R.Civ.P. 8 and amount to no more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," <u>Iqbal</u>, 129 S.Ct. at 1949-50 (check cite), and must be dismissed for failing to state a plausible claim upon which relief can be granted. Hence, Plaintiff's retaliation claims must be dismissed, albeit without prejudice.[9]

---

[9]   To state a claim of retaliation, a prisoner must allege, *inter alia*, an "adverse action" was taken against him.   The DOC Defendants moved to dismiss Plaintiff's retaliation claims on the basis that Plaintiff could not possibly state a claim of retaliation because he was, in fact, not deterred from filing grievances and complaints and hence could not allege an "adverse action."   The DOC Defendants argued this, even though they acknowledge that whether an action constitutes an "adverse action" is determined on an objective reasonable person standard.   ECF No. 69 at 10 to 12. The court is not convinced by this argument. <u>See</u>, <u>e.g.</u>, <u>Kounelis v. Sherrer</u>, 529 F.Supp.2d 503, 531 (D.N.J. 2008) ("Defendants' seem to conclude that because Kounelis was not deterred by the allegedly retaliatory conduct, then a person of ordinary firmness would not be deterred from

(footnote continued on next page)

Lastly, the DOC Defendants point out that the complaint fails to state a Section 1983 claim against the following DOC Defendants: Jeffrey Beard, Alan Fogel, Raymond Sobina, Lockett, Wingard, Kwisnek and Deputy Superintendent Seckers.   ECF No. 69 at 6 to 8.   The DOC Defendants point out that *respondeat superior* is not a basis for liability under Section 1983 and that the complaint reveals liability as to these defendants premised solely upon *respondeat superior*.   The Court agrees with one caveat.   The complaint appears to base liability against all these defendants other than Ms. Kwisnek,[10] solely upon their role in the grievance process or because Plaintiff sent them complaints.   However, the rule is that "[t]he failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation." <u>Rauso v. Vaughn</u>,

---

engaging in similar acts. The law of this Circuit does not support Defendants' position. Moreover, the Court of Appeals has clearly stated that an action is adverse when a person of ordinary firmness would be deterred from exercising his constitutional rights. The Court of Appeals has never required that the plaintiff himself be deterred by the allegedly retaliatory action and it is an illogical requirement."); <u>Curtician v. Kessler</u>, C.A. No. 07-286 Erie, 2009 WL 2448106, at *11 (W.D.Pa. Aug. 7, 2009 (The test for adverse action, however, is objective, not subjective, and whether the plaintiff was actually deterred by the defendant's retaliatory acts is not dispositive.") (quoting <u>Brooks v. Smith</u>, NO. 3:CV-04-2680, 2007 WL 3275266, at *11 (M.D.Pa.2007) (citations omitted), *reconsideration. den.,* 2007 WL 4556671 (M.D.Pa. Dec. 20, 2007)).   The DOC Defendants' argument may have more persuasive value in the context of a summary judgment motion, where the fact that a plaintiff was not deterred might provide some supporting evidence as to what might or might not deter a reasonable person, given that the plaintiff was not, in fact, deterred.   However, in the context of a motion to dismiss, we cannot say that merely because Plaintiff was not deterred that a reasonable person would not be deterred and therefore, a complaint demonstrating that the Plaintiff was not deterred, does not, merely for that reason, fail to state a retaliation claim.

[10]   We note one caveat.   We have dismissed the retaliation claims against all Defendants for factual insufficiency and that is an adequate ground to dismiss those claims.   We find however, that the present ground of lack of personal involvement would not serve as an adequate ground to have dismissed the retaliation claims against Ms. Kwisnek, given the allegation that she filed a retaliatory report, accusing Plaintiff of engaging in self-abuse, which resulted in his transfer to SCI-Fayette. ECF No. 59 at 7, ¶ 26.   Nevertheless, the two claims against Ms. Kwisnek can be dismissed since the two claims against her are being dismissed on other grounds, i.e., namely the <u>Durmer</u> rule for Plaintiff's Eighth Amendment claims and the factual insufficiency of Plaintiff's retaliation claims.

No. CIV. A. 96-6977, 2000 WL 873285, at *16 (E.D.Pa., June 26, 2000). <u>See</u> <u>also</u> <u>Overholt v.</u>

<u>Unibase Data Entry, Inc.</u>, 221 F.3d 1335 (Table), 2000 WL 799760, at *3 (6th Cir. 2000) ("The

defendants were not obligated to 'properly' respond to Overholt's grievances because there is no

inherent constitutional right to an effective prison grievance procedure. Hence, his allegations that

the defendants did not properly respond to his grievances simply do not rise to the level of a

constitutional violation.") (citations omitted); <u>Caldwell v. Beard</u>, No. 2:07-CV-727, 2008 WL

2887810, at *4 (W.D.Pa. July 23, 2008) ("Such a premise for liability [i.e., for performing a role in

the grievance process] fails as a matter of law."), *aff'd*, 324 Fed.Appx. 186 (3d Cir. 2009).

Accordingly, the complaint against these DOC Defendants should be dismissed.

Accordingly, it is hereby **ORDERED** that the Medical Defendants' Motion to Dismiss,

ECF No. 65, be **GRANTED** and that Plaintiff's Eighth Amendment claims against them be

dismissed with prejudice and that Plaintiff's Retaliation claims against Dr. McGrath be dismissed

without prejudice.     It is further **ORDERED** that the DOC Defendants' motion to dismiss, ECF

No. 68, is **GRANTED IN PART and DENIED IN PART**.    It is **GRANTED** as to Plaintiff's

Eighth Amendment claims, which are dismissed with prejudice against all DOC Defendants and it

is **GRANTED** as to Plaintiff's Title II ADA claims against Defendants Matthews, Price, Lockett,

Wingrad and Seckers in their personal capacities but it is **DENIED** as to these five defendants in

their official capacities.    It is also **GRANTED** as to Plaintiff's Retaliation claims against all the

DOC Defendants, albeit without prejudice.

_____
Lisa Pupo Lenihan
Chief U.S. Magistrate Judge

Dated:   February 28, 2011

24

cc:     David Michael Glatts
        GZ-0144
        SCI Greensburg
        165 SCI Lane
        Greensburg, PA 15601

        Counsel of Record via CM-ECF